IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GILFRED L. SPRADLIN,             :
          Plaintiff,      :
                            :     No. 4:CV-02-2237
      v.                       :
                            :     (Judge McClure)
BOROUGH OF DANVILLE,             :
a municipal corporation, et al., :
          Defendants.     :

# M E M O R A N D U M

December 7, 2005

Gilfred Spradlin, pro se, initiated this civil action on December 9, 2002.  In his amended complaint,[1] Spradlin named as defendants the Borough of Danville, Danville Borough Council, and various Borough officials, including Codes and Zoning Enforcement official Jeanne Kiewlak, and Danville Borough Solicitors Robert Marks and Michael Dennehy.  The complaint alleges various federal and state claims under the Constitution of the United States and the Constitution and laws of the Commonwealth of Pennsylvania.  The claims arise out of Spradlin's ownership of certain properties in the Borough of Danville, and the plethora of zoning and code disputes associated with those properties.

---

[1]We granted leave to amend his complaint in a memorandum and order dated December 10, 2003.  (Rec. Doc. No. 34.)

All defendants filed motions to dismiss.  All claims against defendants in their official capacities were dismissed as redundant on December 10, 2003.  (Rec. Doc. No. 34.)  Various counts were dismissed as time-barred, and others were dismissed due to the plaintiff's failure to allege the necessary elements of the claim. After "expending considerable effort honing plaintiff's accusations," the court allowed a number of claims to survive: substantive and procedural due process claims in Counts VII, IX, and XI; federal and state claims for an allegedly unreasonable administrative search of plaintiff's Water Street Property in Count IX; a tortious interference with contractual relations claim against the Danville Solicitors in Count X; a state claim for malicious prosecution in Count XI; and a free speech and equal protection claim in Count XIII.  (Rec. Doc. No. 34, at 22-24.)

The parties have conducted discovery, and the plaintiff has deposed 23 persons.  Now pending before the court are motions for summary judgment filed by the Borough of Danville, the Danville Borough Council, and Jeanne Kiewlak (collectively the "Borough Defendants"), and Borough Solicitors Marks and Dennehy (the "Solicitor Defendants").  The Borough Defendants have moved for dismissal of the claims against the Danville Borough Council as duplicative of the claims against the Borough itself.  Also pending is the Borough Defendants' motion to strike portions of the plaintiff's counterstatement of facts.

2

**DISCUSSION:**

**I.  THE DANVILLE BOROUGH COUNCIL'S MOTION TO DISMISS**

In its motion for summary judgment, the Borough Defendants argue that the claims against the Danville Borough Council are duplicative of the claims against the Borough of Danville, and should therefore be dismissed.  (Rec. Doc. No. 91, at 5.) In response, Spradlin argues that because a municipality acts through its officials, it is essential to retain the Council as a defendant.  (Rec. Doc. No. 107, at 4.) Spradlin's argument is misplaced.  Because the Borough itself as a named defendant would ultimately be liable for any judgment entered against the Borough Council, the Council is a redundant party to the case.  See Satterfield v. Borough of Schuylkill Haven, 12 F. Supp. 2d 423, 431 (E.D. Pa. 1998) (Van Antwerpen, J.). This dismissal  does not in any way prejudice Spradlin's right to pursue his claims based on the alleged misconduct of the Borough Council.  "However, since the Borough itself will be directly liable for any misconduct on the part of the Borough Council, the inclusion of both entities as Defendants is unnecessary."  Id.  All claims against the Danville Borough Council will therefore be dismissed.


**II.  THE MOTIONS FOR SUMMARY JUDGMENT ON THE REMAINING        CLAIMS**

## A.  LEGAL STANDARDS

### 1.  Summary Judgment

A district court may properly grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The plain language of the rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  A genuine issue of material fact is one that may reasonably be resolved in favor of either party.  Id.  In determining whether there is a disputed issue of material fact, the court will draw all reasonable inferences and any ambiguities in favor of the nonmoving party.  Am. Flint Glass Workers Union v. Beaumont Glass Co., 62 F.3d 574, 578 (3d Cir. 1995) (citation omitted).

The party opposing a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The nonmoving party "has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Ridgewood Bd. Of Educ. v. N.E. ex rel. M.E., 173 F.3d 238, 252 (3d Cir. 1999) (citations omitted); see also Fed. R. Civ. P. 56(e).  "Speculation and conclusory allegations do not satisfy this duty."  Ridgewood Bd. Of Educ., 173 F.3d at 252 (citation omitted).  Furthermore, the "mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient."  Anderson, 477 U.S. at 252.

In this case, plaintiff Gilfred Spradlin has proceeded pro se.  "While pro se pleadings are entitled to liberal construction, the plaintiff must still set forth facts sufficient to withstand summary judgment."  Shabazz v. Odum, 592 F. Supp. 1513, 1515 (M.D. Pa. 1984) (Caldwell, J.).  The court has granted this pro se plaintiff every liberality in construing his filings.

*2.  Section 1983*

Spradlin's remaining claims are brought under 42 U.S.C. § 1983.  Section 1983 does not create substantive rights, but rather provides a remedy for the

5

violation of rights created by federal law.  <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 633 (3d Cir. 1995).  The statute provides for a cause of action against persons who, acting under color of state law, deprive another individual of any rights, privileges, or immunities secured by the Constitution.  42 U.S.C. § 1983.  In order for a plaintiff to prevail under Section 1983, he must establish two elements: (1) that the defendants were "state actors," and (2) that they deprived the plaintiff of a federal right.  <u>See</u> <u>Groman</u>, 47 F.3d at 633.

**A.  Spradlin Has Not Shown That The Solicitor Defendants are State Actors**

As an initial matter, the Solicitor Defendants argue that they are not state actors and cannot therefore be held liable under Section 1983.  43 U.S.C. § 1983 requires that Spradlin show that the Solicitor Defendants acted under the color of state law and denied him a federally protected constitutional or statutory right. <u>Angelico v. Lehigh Valley Hosp., Inc.</u>, 184 F.3d 268, 277 (3d Cir. 1999) (citing <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 930 (1982); <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1264 (3d Cir. 1994)).

The Solicitor Defendants state that "[o]ther than the fact that Marks and Dennehy are solicitors for the Borough, there is no evidence as to exactly what alleged conduct by Marks and/or Dennehy has deprived plaintiff of his right to property without due process of law."  (Rec. Doc. No. 100, at 8.)  The court is

6

likewise  unable to identify the alleged conduct of the Solicitor Defendants that

Spradlin claims denied him of his rights.  Spradlin argues that the Solicitor

Defendants "participated in the adoption and enforcement of Borough Ordinances

which have deprived Plaintiff of his basic fundamental rights."  (Rec. Doc. No.

117, at 4.)  Spradlin also states that the Solicitor Defendants "possessed first hand

knowledge" that his rights "were being denied at their hands," that the solicitors

"were active participants in the derpivation [sic] and could predict with accuracy

when the deprivation would take place."  (Id. at 6.)  Viewing the record in the light

most favorable to the plaintiff, there is nothing to support these ambiguous

allegations.

Even were plaintiff to directly identify conduct that allegedly deprived him of

a federal right, he has not proven that the Solicitor Defendants were state actors for

the purpose of Section 1983.  The record indicates that the Solicitors for the

Borough of Danville maintain a private practice with the Borough as one of the

firm's clients.  (Rec. Doc. No. 92, Ex. E, Dennehy Dep., at 5-7.)  This role as

solicitors for the Borough does not render them state actors per se.  O'Hanlon v.

City of Chester, No. CV 00-0664, 2002 WL 393122, at *4 (E.D. Pa. Mar. 12,

2002) (Hutton, J.).  "Attorneys performing their traditional functions will not be

considered state actors solely on the basis of their position as officers of the

7

court." <u>Angelico</u>, 184 F.3d at 277 (citing <u>Polk County v. Dodson</u>, 454 U.S. 312, 318 (1981)).   The Third Circuit has held that "[a] person may be found to be a state actor when (1) he is a state official, (2) he has acted together with or has obtained significant aid from state officials, or (3) his conduct is, by its nature, chargeable to the state." <u>Angelico</u>, 184 F.3d at 277 (quotations omitted).

Spradlin has adduced no evidence that either Marks or Dennehy is a state official.  Spradlin has likewise failed to identify conduct chargeable to the state allegedly engaged in by the solicitors.  Rather, Spradlin argues that Marks and Dennehy conspired with Borough officials to deprive him of his property without due process.  (Rec. Doc. No. 117, at 6.)  Spradlin directs this court to no facts in the record, and after our own review we have found none, from which a reasonable jury could conclude that such a conspiracy existed.  Spradlin simply states that "[i]t is a fact Defendant worked in concert with Borough Defendants (primarily Kiewlak) resulting in Plaintiff's rights being denied."  (<u>Id.</u>)

"Speculation and conclusory allegations do not satisfy [the] duty" to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could find in favor of the nonmoving party.  <u>Ridgewood Bd. Of Educ.</u>, 173 F.3d at 252.  Spradlin attempts to rebut the Solicitor Defendants' motion for summary judgment with conclusory allegations of conspiracy, but fails

8

to identify facts in the record to support such a claim.  Spradlin has failed to

present evidence indicating that the Solicitor Defendants are state actors for the

purpose of 42 U.S.C. § 1983.  Summary judgment will therefore be entered for the

Solicitor Defendants on all of Spradlin's remaining Due Process, Fourth

Amendment, and First Amendment claims.[2]

### B.  Due Process Claims (Counts VII, IX, and XI)

Spradlin has alleged that he was deprived of his rights to substantive and

procedural due process.  The claims arise in three different counts.  In Count VII,

Spradlin claims that he was "denied a reasonable and meaningful opportunity to

appeal" a Notice of Violation sent by the Codes and Zoning Enforcement Official

on September 7, 2000, because "a time limit of (5) five days did not provide

Plaintiff[] a meaningful appeal process."  (Am. Compl., Rec. Doc. No. 19 at ¶

133.)  In Counts IX and XI, Spradlin claims that he was denied his right to due

process because the Borough failed to establish a BOCA Code Appeals Board,

---

[2]Even were we to find the Solicitor Defendants to be state actors for the

purpose of Section 1983, they would be entitled to summary judgment on all of

Spradlin's remaining federal claims based on the analysis contained in this

memorandum.

and that failure denied Spradlin the opportunity to appeal a Stop Work Order

issued on or about January 15, 2001 (id. at ¶¶ 167-69), and a Correction Notice

issued on October 9, 2001 (id. at ¶¶ 188-191).  We have construed Spradlin's

amended complaint to allege that these procedural deficiencies denied his

fundamental property interest in the use and development of his property.  All

defendants have moved for summary judgment on all counts.

1.  *Procedural Due Process*

    The Fourteenth Amendment of the United States Constitution forbids a state

from depriving a person of life, liberty, or property without due process of law.

U.S. Const. amend. XIV, § 1.  In a case such as this, where a plaintiff has sued

under 42 U.S.C. § 1983 alleging that state actors[3] failed to provide him due

process, we employ a "familiar two-stage analysis."  Alvin v. Suzuki, 227 F.3d 107,

116 (3d Cir. 2000) (quoting Robb v. City of Philadelphia, 733 F.2d 286, 292 (3d

Cir. 1984)).  We inquire (1) whether the asserted individual interests are

encompassed within the Fourteenth Amendment's protection of "life, liberty, or

property,"[4] and (2) whether the procedures available provided the plaintiff with

---

[3]The parties do not dispute that the Borough Defendants are state actors.

[4]The use and enjoyment of property are interests protected by the Fourteenth

Amendment due process clause.  See, e.g., Siegmond v. Fedor, No. 3:CV-01-

10

"due process of law." Id.

"In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." Id. "A state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." Id. (quoting Dusanek v. Hannon, 677 F.2d 538, 543 (7th Cir. 1982)). "A due process violation is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." Id. (quoting Zinermon v. Burch, 494 U.S. 113, 126 (1990)). "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." Id. (citing McDaniels v. Flick, 59 F.3d 446, 460 (3d Cir. 1995)).

In Count VII, Spradlin claims that the five-day window provided by Section

───────────

2266, 2004 WL 1490430, at *7 (M.D. Pa. June 29, 2004) (Vanaskie, C.J.) (citing Neiderhiser v. Borough of Berwick, 840 F.2d 213, 218 (3d Cir. 1988)). Spradlin thus satisfies the first requirement of the due process test. Our inquiry focuses on the second requirement: the adequacy of the procedures available to Spradlin.

139-55(B)(3) of the Borough of Danville Zoning Ordinance to appeal a zoning

violation is unreasonable and fails to provide a meaningful opportunity to review.[5]

This claim revolves around a Notice of Violation alleging a zoning violation at

Spradlin's Water Street Property.  Spradlin leased portions of the property to a dry

cleaner and a salon in late 1999 or early 2000.  Kiewlak issued a Notice of Violation

on September 7, 2000, advising Spradlin that he needed to obtain a zoning permit

for these uses, as the uses permitted by the existing zoning permit were limited to a

gym and office space.[6]  It is undisputed that the Notice of Violation advised

Spradlin of his right to appeal, and contained a photocopy of Section 139-55(B)(3)

of the Zoning Ordinance, which pertains to appeals. However, Spradlin did not

appeal.  Instead, he argues to this court that the appeal period is too short.

_____

[5]The portion of the code pertaining to appeals states: "Appeals.  Any

recipient of a notice of enforcement shall have the right to appeal to the Zoning

Hearing Board to remove such notice.  Such appeals, however, must be filed with

the Zoning Hearing Board not more than five (5) days following the receipt of such

an enforcement notice."  Danville Borough Code, Chapter 139, Section 139-

55(B)(3).

[6]Spradlin disputes whether the existing permit was so limited, but that matter

is irrelevant to the due process question presently before the court.

The Third Circuit has determined that "[i]n Pennsylvania the procedure for challenging zoning ordinances substantially conforms with the general due process guidelines enunciated by the Supreme Court." Rogin v. Bensalem Twp., 616 F.2d 680, 695 (3d Cir. 1980); see also Siegmond v. Fedor, No. 3:CV-01-2266, 2004 WL 1490430, at *7 (M.D. Pa. June 29, 2004) (Vanaskie, C.J.); Omnipoint Commc'ns, Inc. v. Penn Forest Twp., 42 F. Supp. 2d 493, 507 (M.D. Pa. 1999) (Vanaskie, C.J.). As the Third Circuit has explained:

> The Pennsylvania legislature has enacted a system for
> processing challenges to zoning ordinances . . . . A
> landowner who wishes to challenge the validity of a
> zoning ordinance or amendment that restricts the use or
> development of its land may file a challenge with the
> Zoning Hearing Board and may appeal from any
> decision by the Zoning Officer applying the ordinance.
> [Such an appeal] may be taken where . . . the
> landowner believes that the Zoning Officer misapplied
> an applicable rule of law . . . . If the landowner is
> dissatisfied with the Board's decision it then has the
> right to appeal to the Court of Common Pleas. The
> appeal may take the form of direct judicial review of the
> Board's decision, or the court may take new evidence
> and enter its own findings of fact after trial de novo.
> The Court is authorized to "declare any ordinance or
> map invalid and to set aside or modify" any action,
> decision, or order of the Township, Zoning Officer, or
> Zoning Hearing Board.

Rogin, 616 F.2d at 694-95 (citations omitted). The procedural mechanism afforded

to Spradlin was this: (1) appeal Kiewlak's decision to the ZHB; (2) if dissatisfied with the decision of the ZHB, appeal to the Court of Common Pleas. Instead of pursuing the proper avenue of appeal, Spradlin sidesteps the constitutional procedure provided in Pennsylvania and instead complains in federal court that the five-day window in which to file a notice of appeal is unreasonable.

The five-day window is not a period in which a prospective appellant must mount an entire defense to the charged zoning violation. Rather, "[a] property owner receiving a Notice of Violation in Danville Borough has five days from the date of receipt to mail or deliver a simple statement to the Borough Offices setting forth the section of the Notice in dispute, the reason for dispute, and a request for a hearing before the ZHB." (Rec. Doc. No. 91, at 10-11.) This does not appear to be a complicated matter requiring in-depth and time-consuming research.

"[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Due process is flexible and calls for such procedural protections as the particular situation demands." Mathews v. Eldredge, 424 U.S. 319, 334 (1976) (quotations and citations omitted). To determine the requirements of due process in any given situation, the Supreme Court has articulated a balancing test for the court to apply. Id. at 335; Rogin, 616 F.2d at 694. The "private interest affected by the governmental action and the

14

value of additional procedural safeguards are to be weighed against the fiscal and administrative burdens that additional procedures would impose on the government." Rogin, 616 F.2d at 694 (citing Eldredge, 424 U.S. at 335).

The private interest here is the ability to appeal a zoning violation on private property. To be sure, it would be possible for the Borough to choose a lengthier period of time in which a citizen could file an appeal, but the Borough has not chosen to do so. Pennsylvania law does not mandate a minimum time period for a citizen to file an appeal from a zoning determination. See 53 Pa. Cons. Stat. Ann. § 10616.1. The parties have not briefed what additional burden an extended period of time would impose on the Borough government, but the court is persuaded that the five-day window satisfies the requirements of due process in this zoning context.

"In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." Alvin, 227 F.3d at 116. Spradlin did not take advantage of the processes available to him, namely an appeal to the ZHB, and a subsequent appeal to the Pennsylvania Court of Common Pleas. Spradlin does not argue that the process is unavailable; rather, he argues that it is unreasonable. To make his claim for a violation of procedural due process,

15

Spradlin must show that the five-day window is "patently inadequate."  Since the

"process on the books . . . appears to provide due process, the plaintiff cannot

skip that process and use the federal courts as a means to get back what he wants."

Id. (citing McDaniels v. Flick, 59 F.3d 446, 460 (3d Cir. 1995)).   Because of the

flexible nature of due process and the relatively simple act of filing an appeal from a

notice of a zoning violation, we find that the five-day appeal period is not patently

inadequate.  Spradlin's procedural due process claim on this count fails.

In Counts IX and XI, Spradlin claims that he was denied his right to due

process because the Borough failed to establish a BOCA Code Appeals Board.

Such a Board enables citizens to appeal a decision of the code official issued

pursuant to the BOCA codes.[7]  Spradlin alleges that this failure denied him the

opportunity to appeal a Stop Work Order issued around January 15, 2001 and a

Correction Notice issued on October 9, 2001.  The January 15 Stop Work Order

was issued pursuant to the Danville Borough 1993 BOCA Basic Building Code for

Spradlin's failure to obtain a permit to perform construction and demolition work

---

[7]The BOCA Code Appeals Board should be distinguished from the Zoning

Hearing Board, which hears appeals from decisions by the code official issued

pursuant to Borough ordinances not derived from the BOCA codes.

16

on his Water Street Property.  The October Correction Notice was issued pursuant

to the Danville Borough 1993 BOCA Property Maintenance Code for Spradlin's

alleged failure to provide heat to tenants residing in his Mulberry Street apartment

building.

The defendants admit that no Appeals Board was empaneled at the time

Spradlin was issued the Stop Work Order and Correction Notice.  Spradlin

responds that due to this deficiency, he had no effective avenue of appeal because

there was no appellate body in existence.  However, Spradlin has pointed to no

authority requiring that there be a standing Code Appeals Board.  The BOCA Code

states that the Appeals Board shall consist of five individuals possessing varied

qualifications, and requires that the Board "shall meet upon notice from the

chairman, within ten days of the filing of an appeal, or at stated periodic meetings."

BOCA Nat'l Building Code § 121.3 (Rec. Doc. No. 92, at Ex. J).  The fact that a

Code Appeals Board was not empaneled, however, does not prevent a prospective

appellant from filing a notice of appeal with the Borough Offices.[8]

_____

[8]In fact, Spradlin himself informs us that under cross-examination by

Spradlin at his trial regarding the October Correction Notice, Kiewlak testified "you

come to me and I'll set one up," apparently referring to a BOCA Code Appeals

The Borough Defendants argue that had Spradlin appealed, the Borough Council "would have been required to either timely fill the vacancies on the Board of Review and hear the appeal, or dismiss the Correction Notices issued to Plaintiff." (Rec. Doc. No. 91, at 14.)  The BOCA Code provides that should an appellant be dissatisfied with the decision of the Appeals Board, such a person "shall have the right to apply to the <u>appropriate court</u> for a writ of certiorari to correct errors of law."  1993 BOCA Nat'l Building Code § 121.7 (emphasis added) (Rec. Doc. No. 92, at Ex. J).  The appropriate court would be the Pennsylvania Court of Common Pleas.  <u>See</u> <u>Manganaro v. Reap</u>, No. 3:CV-00-299, slip op. at *6 n.1 (M.D. Pa. April 27, 2001) (Munley, J.) (where plaintiff argued that he was denied procedural due process because the BOCA Code Appeals Board was defective, the court found that his proper avenue of appeal was through the state courts; it was inappropriate to raise the issue in federal court without having

---

Board.  (Rec. Doc. No. 107, at 20.)  This supports the conclusion that had Spradlin pursued an appeal, the Borough would be forced to either empanel a Board and hear the appeal, or dismiss the notices.  Had they done neither, the next procedural step for Spradlin would be to appeal to the Pennsylvania Court of Common Pleas.

appealed to the Code Appeals Board).  Likewise, if a Board were empaneled and it upheld the code official's determinations, Spradlin may have appealed to state court.

A violation of due process "is not complete unless and until the State fails to provide due process." Alvin, 227 F.3d at 116 (quoting Zinermon, 494 U.S. at 126.)  Spradlin may not argue in federal court that he was denied due process without first attempting to utilize the procedures made available by the Borough. The proper procedure for Spradlin to follow would have been to file a notice of appeal from the charged BOCA violations with the Borough offices.  If dissatisfied with the response, the Court of Common Pleas would have been the appropriate court to challenge the decision (or lack thereof) by the Appeals Board.  Instead, Spradlin has brought this claim in federal court, and we cannot rule that the Borough Defendants failed to provide the plaintiff due process when they have not been put to the test in the first instance.

Summary judgment will be granted in favor of all defendants on the plaintiff's procedural due process claims.

*3.  Substantive Due Process*

To prevail in a Section 1983 substantive due process claim regarding a municipal land use decision, a plaintiff must meet two requirements.  First, the

plaintiff must show that the property interest at issue is worthy of substantive due process protection.  Siegmond v. Fedor, No. 3:CV-01-2266, 2004 WL 1490430, at *7 (M.D. Pa. June 29, 2004) (Vanaskie, C.J.) (quoting Nicolette v. Caruso, 315 F. Supp. 2d 710, 721 (W.D. Pa. 2003)).  Second, the plaintiff must prove that the government's deprivation of that protected property interest "shocks the conscience."  Id.; see also Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 285 (3d Cir. 2004) (Chertoff, J.) ("whether a zoning official's actions or inactions violate due process is determined by utilizing a 'shocks the conscience' test"); United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 399-400 (3d Cir. 2003) (Alito, J.) ("our cases have repeatedly acknowledged that executive action violates substantive due process only when it shocks the conscience").

The use and enjoyment of property are interests protected by the substantive component of the Fourteenth Amendment due process clause.  See, e.g., Siegmond, 2004 WL 1490430, at *7 (citing Neiderhiser v. Borough of Berwick, 840 F.2d 213, 218 (3d Cir. 1988)).  Spradlin thus satisfies the first requirement of the substantive due process test in the sense that his interest in the general use and enjoyment of his property is protected.

As the second component of a substantive due process claim, a plaintiff must show that the government's conduct shocks the conscience.  Whether

20

executive action shocks the conscience depends on the factual context, United

Artists, 316 F.3d at 400, but "only the most egregious official conduct" offends the

Constitution, id. at 399 (quoting County of Sacramento v. Lewis, 523 U.S. 833,

845-46 (1998)).  The "shocks the conscience" test is "designed to avoid converting

federal courts into super zoning tribunals."  Eichenlaub, 385 F.3d at 285.  "The

latest jurisprudence of the Third Circuit . . . evinces a preference for evidence of

self dealing or other unjust enrichment of the municipal decision makers as a way to

meet the shocks the conscience standard."  Robinson v. Limerick Twp., No.

Civ.A. 04-3758, 2005 WL 17972 (E.D. Pa. Jan. 4, 2005) (Kelly, J.) (citing

Eichenlaub, 385 F.3d at 285).

    Spradlin appears to allege that the actions of the Borough Defendants that

shock the conscience were the adoption of the 1993 BOCA Building and Property

Maintenance Codes (and the allegedly unconstitutional appeals process), the

adoption of the Danville Borough Zoning Ordinances in 1996, and the enforcement

of the BOCA Code and zoning ordinance by Jeanne Kiewlak, which Spradlin

claims was "not appropriate, and was arbitrary, bias [sic] and not in good faith."

(Rec. Doc. No. 107, at 17.)

    Nothing in the record indicates that anything about the way Danville

Borough adopted the 1993 BOCA National Building and Property Maintenance

21

Code shocks the conscience.  Plaintiff argues that the process by which the

Borough adopted the Code was defective.  Spradlin has not identified any

admissible evidence substantiating this claim, and instead directs the court to the

opinion of an attorney, formulated for an unrelated matter, regarding the Borough's

adoption process.  Furthermore, Spradlin does not explain how this alleged

deficiency impacted his right to use or enjoy his property.  There is no evidence of

self dealing, unjust enrichment, or any other untoward conduct on behalf of the

Borough Defendants with regard to the adoption of the 1993 BOCA Codes;

consequently, Spradlin's substantive due process claim fails.

Likewise, nothing indicates that any aspect of the Borough's adoption of the

1996 Danville Borough Zoning Ordinance shocks the conscience.  The Ordinance

was drafted by Marvin Brotter, Ph.D., a longtime city planning consultant.  Spradlin

objects to the alleged involvement of Kiewlak and others with the development of

the Ordinance, but cites no part of the record regarding any such involvement and

cites no authority suggesting that it would be improper or illegal.  Nothing in the

record suggests self dealing, unjust enrichment, or any other untoward activity on

the part of the Borough Defendants or anyone else with regard to the adoption of

the Zoning Ordinance.  Spradlin's claim fails.

Finally Spradlin claims that Kiewlak's enforcement of the BOCA Code and

22

zoning ordinance was inappropriate, arbitrary, and in bad faith.  In support of these

claims, Spradlin states that Kiewlak "could predict when Plaintiff would be denied

his constitutionally protected rights, as she played an integral part in the drafting of

the content of the ordinances."  (Id. at 18.)  Spradlin claims that "Kiewlak issued

notices of violation and/or correction notices with the full knowledge Plaintiff

would be deprived of his rights."  (Id.)  Spradlin fails to explain or substantiate

these claims.  Spradlin also complains of the way Kiewlak filed a complaint against

him for failure to provide his tenants with a source of heat at his Mulberry Street

apartment building.

Nothing in the record indicates that Kiewlak's conduct with regard to the

heating dispute at the Mulberry Street building shocks the conscience.  In October

2001, one of Spradlin's tenants contacted Kiewlak to complain that there was no

heat in her apartment building, which was owned by Spradlin.  Kiewlak investigated

the complaint by interviewing the tenant and her roommate, both of whom denied

having heat.  Kiewlak also obtained a statement signed by five tenants in Spradlin's

Mulberry Street building stating that none of them had heat.  Kiewlak also contacted

PG Energy, supplier of natural gas to the building, who informed Kiewlak that the

gas supply to the building had been shut off in June 2001 due to Spradlin's failure

to pay the bill.  Based on this investigation, Kiewlak issued Spradlin a Correction

Notice and eventually filed a summary criminal complaint against Spradlin.  The charges were eventually dismissed.

Spradlin claims that Kiewlak's conduct with regard to the Mulberry Street apartment shocks the conscious because, he claims, she did no investigation and instead "took the word of a tenant who was no longer living at the property and the tenant was the niece of Borough Councilman, Ken Strausser." (Rec. Doc. No. 107, at 21.)  In this argument, Spradlin ignores the investigative efforts of Kiewlak regarding the other tenants of the building, as well as the gas company.  Spradlin points to no evidence of self-dealing or unjust enrichment on the part of Kiewlak. Instead, Spradlin asserts that the defendants are "out to get him." (Rec Doc. No. 19, at ¶ 200.)  But nothing in the record suggests that the Borough Council, the Borough Solicitor, or the Codes and Zoning Enforcement Official singled plaintiff out or acted in an egregious manner with respect to the use, development or ownership of his property.  "Speculation and conclusory allegations do not satisfy [the] duty" to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could find in favor of the nonmoving party. Ridgewood Bd. Of Educ., 173 F.3d at 252.  Furthermore, even were there improper motives resulting from personal animus–an assumption unsupported by the record in this case–such a situation is insufficient in itself to shock the

24

conscience.  See Corneal v. Jackson Twp., 94 F. App'x 76, 78 (3d Cir. 2004)

("Although some conduct may evidence personal animus . . . under United Artists,

mere improper motives are not conscious-shocking.")

Spradlin has not pointed to anything in the record that "shocks the

conscience," and after a thorough review of the record, we have found nothing

rising to this level.  Construing all the facts in the light most favorable to the

plaintiff, no reasonable factfinder could find that the defendants deprived Spradlin

of his substantive due process rights by acting in a manner that shocks the

conscience.  Summary judgment will be entered in favor of all defendants on

Spradlin's substantive due process claims.

### C.  Unreasonable Search Claim (Count IX)

In Count IX of his amended complaint, Spradlin alleges that Kiewlak's

warrantless administrative search of the Water Street Property on December 14,

2000, denied him rights secured by the Fourth Amendment to the United States

Constitution[9] and Article I, Section 8 of the Pennsylvania Constitution[10].  The

_____

[9]The Fourth Amendment is enforceable against the States through the

Fourteenth Amendment.  Camara v. Municipal Court of the City and County of San

Francisco, 387 U.S. 523, 528 (1967).

[10]Count IX of the complaint alleges a private cause of action for money

Borough Defendants argue that Kiewlak obtained consent to perform the administrative search, or, in the alternative, that Kiewlak is entitled to qualified immunity.

*1.  Background*

The undisputed material facts relevant to Spradlin's claim of unreasonable

_____

damages against the Borough and its agents arising out of the Pennsylvania Constitution.  If we were to exercise supplemental jurisdiction over this state law claim, we would apply the substantive law of Pennsylvania as set forth by the Pennsylvania Supreme Court.  Carrasquilla v. Mazda Motor Corp., 197 F. Supp. 2d 169, 172 (M.D. Pa. 2002) (McClure, J.).  The Pennsylvania Supreme Court has made no direct pronouncement about whether the state constitution alone provides a private cause of action.  Therefore, we would have to predict how the Pennsylvania Supreme Court would rule on the issue if it were presented to that court.  Id. (citing Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000)).

Because this issue of state law is not settled, and because we grant summary judgment to all defendants on all remaining claims, we decline to exercise our power of supplemental jurisdiction under 28 U.S.C. § 1367(c)(3).

26

search are these.  On November 11, 1998, Spradlin's application for a zoning

variance for the Water Street Property was approved by the Danville Borough

Zoning Hearing Board ("ZHB").  On January 7, 2000, the ZHB issued Spradlin a

letter reminding him that the Danville Borough Zoning Ordinance required him to

submit a new application for a variance for any occupancy of the Property that

would occur after the November 11, 1998 variance expired.  Spradlin did not apply

for a new variance.

On or about November 28, 2000, the Borough Secretary received a citizen

complaint reporting that Spradlin was constructing a gabled or pitched roof on the

Water Street Property.  It is the duty of Jeanne Kiewlak, Danville Borough Codes

and Zoning Administrator, to respond to citizen complaints regarding, inter alia,

building code and zoning matters.  Pursuant to this duty, Kiewlak contacted

Spradlin, and on November 30, 2000, Spradlin orally granted Kiewlak permission

to inspect the Property on December 1, 2000.

On the morning of December 1, Spradlin advised Kiewlak that he wanted to

meet with her on either December 1 or December 4 before allowing her to inspect

the property.  Spradlin and Kiewlak did not meet on December 1 or December 4,

because Spradlin was unprepared.  On December 1, 2000, Kiewlak issued a letter

to Spradlin requesting that the Water Street Property be made available for

27

inspection at 10:00am on December 8, 2000.[11]   The December 8 inspection was

rescheduled for December 14, 2000.  Spradlin was aware of the rescheduling,[12] but

never contacted Kiewlak regarding the December 14 inspection.

At 10:00am on December 14, 2000, Kiewlak arrived at the Water Street

Property for the scheduled inspection, but Spradlin was not present.  Clayton

_____

[11]The letter quoted Section 113.4 of the 1993 National Building Code, which

provides: "[W]hen the code official has reasonable cause to believe that a code

violation exists, the code official is authorized to enter the structure or premises at

reasonable times to inspect.  Prior to entering into a space not otherwise open to

the general public, the code official shall make a reasonable effort to locate the

owner <u>or other person having charge or control of the structure or premises</u>,

present proper identification and request entry.  If requested entry is refused or not

obtained, the code official shall pursue recourse as provided by the law."

(emphasis added).

[12]Spradlin testified at his deposition:

Question: Ultimately, the inspection was rescheduled for December

14, correct?

Answer: I did receive notice that she was going to inspect.

(Rec. Doc. No. 92, Exh. B, at p. 26.)

28

Kirchman, Spradlin's employee, was the only person present at the Water Street

Property at the time of the December 14 inspection.  Spradlin confirms that

Kirchman "had control of[] the gym."  (Pl.'s Stmt. of Mat. Facts, Rec. Doc. No.

108, at ¶ 67.)

Kirchman knew that Kiewlak was the Codes and Zoning Administrator for

Danville Borough, and he knew that she was there to inspect the Water Street

Property.  Kirchman escorted Kiewlak into the building, and showed her the

locations on the first and second floors that she wished to inspect.  Thus

accompanied by Kirchman, Kiewlak inspected the Water Street Property.  Spradlin

challenges this administrative search as unreasonable.

*2. Analysis*

The Fourth Amendment protects "[t]he right of the people to be secure in

their persons, houses, papers, and effects, against unreasonable searches and

seizures."  U.S. Const. amend. IV.  The purpose of this Amendment "is to

safeguard the privacy and security of individuals against arbitrary invasions by

governmental officials."  Camara v. Municipal Court of the City and County of San

Francisco, 387 U.S. 523, 528 (1967).  While it is true that "the Fourth

Amendment's prohibition on unreasonable searches and seizures is applicable to

commercial premises," New York v. Burger, 482 U.S. 691, 699 (1987), "[a]n

29

expectation of privacy in commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's home," id. at 700.

A warrantless search is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). "[T]his rule applies to commercial premises as well as homes." Marshall v. Barlow's, Inc., 436 U.S. 307, 312 (1978). Therefore, a warrantless search of commercial premises would be unreasonable (and therefore unconstitutional) unless it falls into one of the few specifically established exceptions to the general rule. "[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." Schneckloth, 412 U.S. at 219 (citations omitted); United States v. Wilson, 413 F.3d 383, 388 (3d Cir. 2005).

In this case, for the defendants to rely upon the consent exception, it must be shown that (1) the consent was given voluntarily, see Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968), and (2) either Spradlin himself consented to the search or consent was obtained from a third party with the ability to furnish valid consent, see United States v. Matlock, 415 U.S. 164, 171 (1974). See also United States v. Jenkins, 46 F.3d 447, 451 (5th Cir. 1995).

30

Spradlin claims that he did not consent to the search.  However, Spradlin had notice that the inspection would occur on December 14, 2000.  Spradlin never cancelled the inspection, nor did he advise Kiewlak that she was not permitted to inspect the Water Street Property on December 14.  However, we need not decide whether Spradlin himself consented to the inspection if a third party with the legal ability to do so consented to the inspection.  Mr. Kirchman, an employee of Spradlin's who was working at the gym on the day of the inspection, escorted Kiewlak throughout the property.  We must decide whether Kirchman had the legal ability to furnish valid consent to Kiewlak to search the property.

The Third Circuit has recognized "a variety of circumstances in which a third party may validly consent to a search."  See Bolden v. Southeastern Penn. Transp. Auth., 953 F.2d 807, 826 (3d Cir. 1991).  The Court of Appeals has specifically noted that "employees with significant responsibilities relating to the object of the search" may validly consent to a search of their employer's property.  Id.  Other courts have decided that employees with control over their employer's property have the ability to consent to governmental searches.  See, e.g., Jenkins, 46 F.3d at 445-46, 460 (employee had ability to provide valid consent to search where he was the sole employee with dominion and control over the property; even if employee did not have actual authority over employer's property, the government was entitled

31

to rely on his <u>apparent</u> authority); <u>United States v. Murphy</u>, 506 F.2d 529, 530 (9th Cir. 1974) (where employer put the premises under the immediate and complete control of employee, who voluntarily consented to search, the search was not unreasonable); <u>United States v. Antonelli Fireworks Co.</u>, 53 F. Supp. 870, 874 (W.D.N.Y. 1943) (government agents "had a right to assume that [the office manager and assistant office manager], by reason of the nature of their employment, had authority to consent on behalf of the corporation to an orderly examination of company records," even where employees did not have express authority from an officer of employer corporation to consent).

We find that Kirchman had the ability to furnish valid consent to an inspection of the Water Street Property.  Spradlin admits that Kirchman "had control of" the gym.  The undisputed material facts show that Kirchman was the sole employee present at the Water Street Property and that he had access to the entire property.[13]  These facts indicate that Kirchman had significant responsibilities

_____

    [13]Spradlin argues that Kirchman "did not have authorization to allow anyone in any areas of the property except the fitness area."  (Rec. Doc. No. 108, at ¶ 71).  Nothing in the record indicates that Spradlin circumscribed the authority of Kirchman with regard to the Water Street Property.  In fact, Kirchman testified in

relating to the inspected property.  Kirchman knew that Kiewlak was there to

perform an inspection, and he willingly escorted her throughout the building.

Having decided that Kirchman had the ability to furnish valid consent to the

inspection, it must be shown that his consent was voluntary.  <u>Bumper</u>, 391 U.S. at

548-49.  The voluntariness of consent is a question of fact to be determined from

the totality of the circumstances, which include "the setting in which the consent

was obtained, the parties' verbal and non-verbal actions, and the age, intelligence,

and educational background of the consenting party."  <u>Wilson</u>, 413 F.3d at 388

(quotation omitted).  Neither party has addressed the voluntariness of Kirchman's

consent, but the undisputed facts reveal that Kirchman escorted Kiewlak

throughout the property and "showed her what she wanted to see."  (Rec. Doc.

---

his deposition that he was "all over the building" performing construction and

demolition work for Spradlin.  (Rec. Doc. No. 92, Ex. D, Kirchman Dep., at 9.)

Although Spradlin argues that Kirchman lacked actual and express authority to

escort Kiewlak throughout the property–an argument wholly unsupported by the

record at the close of discovery–Kiewlak was still entitled to rely upon the

appearance that Kirchman had the authority to do so.  <u>See</u> <u>Jenkins</u>, 46 F.3d at 460;

<u>Antonelli Fireworks Co.</u>, 53 F. Supp. at 874.

No. 92, Ex. D, Kirchman Dep., at 13.)  There is no evidence of record from which a reasonable jury could conclude, after examining the totality of the circumstances, that Kirchman's consent was anything but voluntary.

Because Kirchman had the ability to provide valid consent for Kiewlak to inspect the property, and because he did voluntarily consent to the inspection, we hold that the search was not unreasonable and therefore did not violate the Fourth Amendment to the United States Constitution.  Summary judgment will be granted in favor of all defendants on Count IX of the Amended Complaint.[14]

---

[14]In an effort to impose liability on the Borough for Kiewlak's December 14, 2000 search, Spradlin claims that the warrantless and allegedly nonconsensual entry of his property by Kiewlak "represents a practice in the Borough of Danville." (Rec. Doc. No. 19, at ¶ 164.)  See Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").  Because we find that the search did not violate the United States Constitution, Spradlin's

*3.   Qualified immunity.*

The Borough Defendants argue in the alternative that Kiewlak is entitled to qualified immunity with respect to Spradlin's Fourth Amendment claim.  The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages so long as their conduct does not violate "clearly established constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Kornegay v. Cottingham, 120 F.3d 392, 395 (3d Cir. 1997).  One of the purposes of qualified immunity is "to spare a defendant not only unwarranted liability but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit."  Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000) (quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  "The entitlement is an immunity from suit rather than a mere defense to liability . . . and is effectively lost if a case is erroneously permitted to go to trial."  Id. (quoting Mitchell v. Forsyth, 472 U.S. 511, 526

────────────

Monell claim fails.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam) ("neither Monell nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when . . . the officer inflicted no constitutional harm").

(1985)).

When the defendant in a Section 1983 action claims qualified immunity, we must first "assess whether the plaintiff's allegations are sufficient to establish the violation of a constitutional or statutory right at all." Id. (citing, e.g., Conn v. Gabbert, 526 U.S. 286, 290 (1999)).  If the plaintiff meets that threshold, the court must determine "as a legal matter, if the right that the defendant's conduct allegedly violate[d] was a clearly established one, about which a reasonable person would have known." Id.  "The standard for granting or denying a motion for summary judgment does not change in the qualified immunity context.  Viewing the facts in the light most favorable to the plaintiff, a court must determine whether the defendant should prevail as a matter of law." Curley v. Klem, 298 F.3d 271, 282 (3d Cir. 2002) (quotations and citations omitted).

"Qualified immunity turns on the reasonableness of the [defendant's] belief that their conduct was legal[,] not its legality per se." Kornegay, 120 F.3d at 395-96.  To determine reasonableness, we inquire "whether a reasonable person could have believed the defendant's actions to be lawful in light of clearly established law and the information [s]he possessed." Id. (quoting Parkhurst v. Trapp, 77 F.3d 707, 712 (3d Cir. 1996)).  "[A]n official who conducts an illegal search may not be held personally liable if [s]he could have reasonably believed that the search

36

comported with the Fourth Amendment." Id. (quoting Shea, 966 F.2d at 130).

Firstly, we have determined that the search was not illegal because the undisputed facts would lead a reasonable factfinder to the inescapable conclusion that Kiewlak obtained consent prior to the search. Secondly, we find that Kiewlak is entitled to qualified immunity because a reasonable person in her position would believe that the search was conducted pursuant to the consent exception. Viewing the facts in the light most favorable to the plaintiff, Kiewlak obtained consent before the search. Without using any form of coercion or duress, Kiewlak was escorted throughout the property by an employee of Spradlin's, a person with access to the entire property and the only person present in the building at the time. A reasonable factfinder would necessarily conclude, based on the undisputed facts and the totality of the circumstances, that Kiewlak's belief in the legality of the search was reasonable. Kiewlak is therefore entitled to qualified immunity on this claim.

### D.  Freedom of Speech and Equal Protection Claims (Count XIII)

Count XIII alleges that the Borough Defendants and Borough Solicitor Marks denied Spradlin his protected right to free speech in violation of the First Amendment to the United States Constitution. Spradlin claims that Marks "intimidated, harassed, humiliated and prevented Plaintiff from addressing [the Danville Borough] Council on matters of public concern" and "relentless[ly]

37

interrupt[ed]" Spradlin during his turn at the podium, because Marks "did not like the content of Plaintiff's speech." (Rec. Doc. No. 19, at ¶¶ 234, 237.) Spradlin argues that the Borough Council "had a duty not to deny Plaintiff his right to be heard." (Id. at ¶ 240.) Spradlin also alleges a violation of the Equal Protection Clause, arguing that the defendants treated him differently than those similarly situated, by "not allow[ing] Plaintiff to speak as others had" at the Danville Borough Council meeting on December 9, 2002.

The Equal Protection claim survived the defendants' motion to dismiss as "a bare bones" allegation, and the First Amendment claim survived because Spradlin set forth the conduct of defendants that allegedly violated his rights, 'as well as the time, the place and the persons responsible." (Rec. Doc. No. 34, at 20) (quoting Young v. Keohane, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992)). All defendants have now moved for summary judgment on these claims.[15]

## 1.  Background

The Danville Borough Council met for a regularly scheduled meeting on December 9, 2002. Mr. Spradlin attended this meeting and addressed the Borough

---

[15]The Borough Defendants did not cite any authority in their motion for summary judgment on this count.

Council without hindrance or interruption for several minutes regarding a school

crossing zone.  Spradlin also announced that he had filed a lawsuit in federal court

that morning naming eleven defendants, including the Borough Council.  Spradlin

informed the Council that he had not yet served the lawsuit, and that he desired to

meet with the Borough Council before proceeding with the suit.

At that point, Robert Marks, Danville Borough Solicitor, interrupted Spradlin

and vociferously objected to any discussion of the lawsuit.  Marks told Spradlin to

have his attorney contact Marks and provide him with a copy of the complaint.

Spradlin continued his attempt at addressing the Council and repeated his request

to meet regarding the lawsuit.  Spradlin's attempts to address the Borough Council

were repeatedly interrupted by the interjections of Marks, but Collins Stump,

President of the Danville Borough Council, invited Spradlin to summarize his

position.  When asked to do so, Spradlin stated: "If the Council wishes, I would be

more than willing to meet before going forward–that's all I had to say."  After an

additional exchange of words with Marks, Spradlin left the Council meeting.  The

meeting was videotaped, and the parties agree that a close review of the videotape

is warranted.

*2.  Analysis*

All defendants argue that Spradlin's First Amendment claim must fail

because he said, in his own words, "all [he] had to say" at the Council meeting.

The Borough Defendants argue that the Council "provided Plaintiff with the

opportunity to say what he wished to say: that he was willing to meet and discuss

the suit prior to serving it on the named Defendants."  (Rec. Doc. No. 91, at 27.)

The argument continues that because Spradlin unambiguously stated that he had

communicated all that he desired to communicate, his right to free speech could not

have been infringed.  Spradlin does not directly respond to this argument in his

opposition to either motion for summary judgment, and instead argues that Solicitor

Marks took control of the meeting and interrupted Spradlin while he was speaking.

While the defendants' argument on this point is inviting, we believe it is too

superficial a ground, standing alone, upon which to grant summary judgment.

Rather, a more in-depth analysis of First Amendment jurisprudence is necessary

before deciding the issue.

The power of the government to prevent or limit speech on public property

is carefully circumscribed by the First Amendment to the United States

Constitution.  Eichenlaub, 385 F.3d at 279.  The Supreme Court has adopted a

forum analysis to determine the extent to which the government may limit speech.

See, e.g., Cornelius v. NAACP Legal Def. & Ed. Fund, Inc., 473 U.S. 788, 797

(1985).  Government facilities not committed to public expression may regulate

40

speech by the public so long as the regulation is reasonable and content neutral.

See Eichenlaub, 285 F.3d at 279.  Speech may be limited only narrowly in public

forums open to general "assembly and debate" as a matter of tradition or

governmental designation.  Id. at 280 (citations omitted).  Traditional public forums

include streets and public parks.  Id.  A third type of public setting–a limited public

forum–is "a forum created by the government that is limited to certain groups or to

discussion of certain topics."  Id.

The Danville Borough Council meeting was a limited public forum.  Like the

citizen's forum portion of the Township Board of Supervisors meeting the Third

Circuit held to be a limited public forum in Eichenlaub, 385 F.3d at 281, the

Borough Council meeting was designed to be limited to matters pertaining to town

government.  The meeting was not a traditional public forum, such as a street or

public park.  "One would certainly not expect the forum of a [Borough] meeting to

include such expressive activities as performance art, lectures on medieval history,

or arguments about private disputes involving town citizens."  Id.

"Plainly, public bodies may confine their meetings to specified subject matter

. . . ."  Id. (quoting City of Madison Joint Sch. Dist. v. Wis. Employment Relations

Comm'n, 429 U.S. 167, 175 n.8 (1976)).  Thus, matters presented at a Borough

Council meeting "may be limited to issues germane to town government."  Id.

41

Such a restriction would be permissible at this Borough Council meeting because in a limited public forum, "content-based restraints are permitted, so long as they are designed to confine the 'forum to the limited and legitimate purposes for which it was created.'" Id. at 280 (quoting Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819, 829 (1995)).

When Spradlin was interrupted by Marks, he was discussing a private lawsuit between himself, the Borough Council, and a number of other defendants. Although Spradlin claims in his Amended Complaint that he "believes he was providing information which was of a public concern . . . . [because] if Plaintiff was [sic] the prevailing party in the law suit [sic], the cost could potentially be born [sic] by the local tax payers [sic]" (Rec. Doc. No. 19, at ¶¶ 235-36), the Borough was justified in its determination not to discuss the suit at the Council meeting. Although the interjections of Marks may have been aggressive, they were permissible in order to "confine the forum to the limited and legitimate purposes for which it was created": the discussion of issues germane to town government. Eichenlaub, 385 F.3d at 280 (citations and quotations omitted). It is also noteworthy that no member of the Borough Council, nor the Borough Solicitors, had seen a copy of the lawsuit at the time Spradlin addressed the Council.

After careful consideration of the record and the undisputed material facts,

42

construing all ambiguities in favor of Spradlin, we will grant summary judgment to all defendants on the First Amendment claim.  The Council was justified in its determination not to discuss a private lawsuit that it had not yet seen at the Council Meeting.  Furthermore, Spradlin himself stated at the meeting that he had said all he wanted to say–that he was willing to meet with the Council before proceeding with the lawsuit.  Thus, although the behavior of Marks at the meeting may have been aggressive, it did not violate Spradlin's rights under the First Amendment.

Spradlin has also maintained a claim for Equal Protection under this count. Neither party has identified any part of the record pertaining to this claim.  Spradlin argues that he "was in fact denied his first amendment right and was treated differently than others."  (Rec. Doc. No. 107, at 29.)  The Equal Protection claim is inextricably tied to the First Amendment claim: Spradlin argues that he was treated differently than others because he was denied his First Amendment right to free speech.  Because we find that there was no First Amendment violation, the Equal Protection claim fails as well.

### E.  Tortious Interference with Contract Claim (Count X) and Malicious Prosecution Claim (Count XI)

In Count X of his amended complaint, Spradlin alleges the Danville Borough Solicitors "interfered with Plaintiff's contractual relations with the Danville Borough

Tax Collector, and denied Plaintiff his contractual and economic bargain."  In

Count XI of his amended complaint, Spradlin has lodged a malicious prosecution

claim against all defendants.  Both of these claims rely entirely upon Pennsylvania

state law.  Because we have granted summary judgment on all claims over which we

had original jurisdiction, we decline to exercise our power of supplemental

jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).

### III.  THE BOROUGH DEFENDANTS' MOTION TO STRIKE

The Borough Defendants have also filed a motion to strike portions of the

plaintiff's counterstatement of facts.  While the court acknowledges that certain

portions of the plaintiff's counterstatement fail to comply with Local Rule 56.1, we

are also cognizant that the plaintiff is pro se.  This motion will be denied as moot.


    s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GILFRED L. SPRADLIN,          :
                Plaintiff,    :
                              :          No. 4:CV-02-2237
        v.                    :
                              :          (Judge McClure)
BOROUGH OF DANVILLE,          :
a municipal corporation, et al.,    :
                Defendants.   :

# O R D E R

December 7, 2005

For the reasons set forth in the accompanying memorandum, IT IS

ORDERED THAT:

1.      All claims against the Danville Borough Council are DISMISSED as
        redundant of those claims against the Borough of Danville;

2.      The motion for summary judgment filed by the Borough of Danville,
        the Danville Borough Council, and Codes and Zoning Enforcement
        Official Jeanne Kiewlak is GRANTED on all counts (Rec. Doc. No.
        89);

3.      The motion for summary judgment filed by Solicitor Defendants
        Robert Marks and Michael Dennehy is GRANTED on all counts (Rec.
        Doc. No. 93);

4.      The Borough Defendants' motion to strike portions of the plaintiff's

counterstatement of facts is DENIED as moot (Rec. Doc. No. 122);

5.      The clerk is directed to enter final judgment in favor of defendants

Borough of Danville, Codes and Zoning Enforcement Officer Jeanne

Kiewlak and Danville Borough Solicitors Robert Marks and Michael

Dennehy; and

6.      The clerk is directed to close the case file.


    s/ James F. McCure, Jr.
James F. McClure, Jr.
United States District Judge